JOSHUA A. SOUTHWICK
GIBSON ROBB & LINDH LLP
1255 Powell Street
Emeryville, California 94608
Telephone: (415) 348-6000
Facsimile: (415) 348-6001
Email: jsouthwick@gibsonrobb.com

Attorneys for Plaintiff in Intervention
TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KATMAI WATER TAXI, LLC,<br><br>　　　　Plaintiff<br><br>　　v.<br><br>NW BEND BOATS, LLC d/b/a NORTH RIVER BOATS,<br><br>　　　　Defendant.<br><hr>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>　　　　Plaintiff in intervention,<br><br>　　v.<br><br>NW BEND BOATS, LLC D/B/A NORTH RIVER BOATS,<br><br>　　　　Defendant. | Case No. 3:21-cv-00110-SLG<br><br>**COMPLAINT IN INTERVENTION** |

/ / /

/ / /

# ORIGINAL COMPLAINT OF TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

Intervenor TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA ("TRAVELERS" or "INTERVENOR"), files this Complaint in Intervention against Defendant NW BEND BOATS, LLC D/B/A NORTH RIVER BOATS.

## THE PARTIES

1. TRAVELERS is a corporation organized and existing under the laws of the State of Connecticut.

2. Defendant NRB is an Oregon limited liability company organized and existing pursuant to the laws of the State of Oregon.

## JURISDICION AND VENUE

3. Personal jurisdiction exists over NRB in this District and Division because the negligent acts and/or omissions of NRB giving rise to these claims occurred in Alaska. Alternatively, the acts, errors, and omissions of NRB giving rise to the alternate breach of contract claim occurred in Alaska.

4. TRAVELERS alleges and contends that NRB committed a maritime tort, making this action an Admiralty and Maritime Claim within the meaning of Federal Rule of Civil Procedure 9(h). Thus, subject matter jurisdiction is appropriate under 28 U.S.C. §1333, insofar as the alleged negligence arose from the operation of a vessel, occurred on navigable waters, disrupted maritime commerce, and bore a significant relationship to traditional maritime activity (passenger transportation).

5. Alternatively, diversity jurisdiction is proper (either for a tort claim or the alternate breach of contract claim) under 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 and the parties are citizens of different states.

6. Venue is proper in this district and division under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claim occurred within the same.

///

# FACTUAL BACKGROUND

7. Plaintiff in the underlying case is KATMAI WATER TAXI, LLC (hereinafter "KWT"), the sister company of Alaska Gold Creek Lodge. KWT is located in southern Alaska in King Salmon, Alaska, which is near the Katmai National Park and Preserve ("KNPP").

8. In 2018, KWT secured a 2-year conditional contract with the Alaska National Parks Service ("ANPS") where KWT could operate a passenger boat to transport park visitors to Brooks Falls, Alaska in KNPP from June 1 until September 25. Following the conclusion of the second year, KWT would be eligible to bid for a 10-year exclusive contract for the same trip.[1].

9. On or about February 16, 2019 KWT entered into the first of a series of Purchase Orders with NRB. In exchange for the total price of $708,000.00, NRB was to design, manufacturer, test, certify, and deliver a 2018 38' Liberty Sub T – Twin Diesel Jet 24-passenger water taxi dubbed "*Otis*." As part of this purchase, KWT and NRB specifically agreed on a line item for sea trials and United States Coast Guard ("USCG") approval for the *Otis*.

10. .Regrettably, on June 1, 2019 NRB's Director of Sales and unlicensed "captain" Mike Blocher ran the *Otis* aground during sea trials. At the time of the grounding, TRAVELERS provided hull and machinery coverage to KWT with respect to the *Otis*.

# THE ACCIDENT

11. On May 31, 2019 *Otis* launched from Lake Camp, intending to travel up the Naknek River towards Brooks Falls. This trip was part of the *Otis'* sea trials.

12. NRB's agent and Director of Sales Mike Blocher was in sole command of the vessel. Blocher was responsible for piloting the *Otis* upriver to the Naknek Lake entrance.

13. There were only 3 channel markers over a 3-mile stretch in place at the time. Safe passage during this first trip was made by sight - i.e., by standing on the edge of the boat and looking down. This safe passage was then marked on *Otis'* Garmin GPS for future trips – thus, the GPS data was critical to safe passage through the channel to avoid running aground.

---

[1] Due to the COVID-19 global pandemic, ANPP extended the 2-year conditional contract by one additional year.

14. The May 31, 2019 trip was cut short when Blocher failed to ensure *Otis*' engine room dampers were open and/or operational, forcing *Otis* to return to the launching point.

15. The following day, under the control of Mike Blocher, the *Otis* re-launched in the Naknek River, intending to travel through the same channel towards Naknek Lake and Brooks Falls. The purpose of this June 1, 2019 trip was for NRB to continue sea trials and obtain United States Coast Guard approval, required to carry more than 6 passengers.

16. Immediately after the boat was launched, the Garmin GPS and instrument panel installed by Blocher and NRB malfunctioned, making it either difficult or impossible for Blocher to use to safely navigate. The malfunctioning instrument panel was *Otis'* sole source for display of speed, fuel, heading, water depth, ground profile and GPS location.

17. Without a functioning GPS, Blocher was unable to access and follow the coordinates identifying safe passage through the channel marked during the May 31, 2019 trip but elected to proceed regardless.

18. A reasonable master, faced with an unmarked and narrow channel and a malfunctioning GPS would have turned back. Likewise, a reasonable master would have obeyed the Inland Rules of Navigation concerning a vessel losing navigational systems. Instead, Blocher continued on, blind and reckless.

19. Just prior to entering the unmarked channel, Blocker asked a passenger to take the helm so Blocker could continue to troubleshoot the broken GPS. Blocher then directed the passenger to adjust his course to starboard. Blocher's course instructions cause the *Otis* to exit the channel and strike an underwater boulder.

20. *Otis* was stranded in the mouth of Lake Naknek for 3 days and was out of commission for an additional 6 weeks for repairs and re-inspections. Pursuant to the obligations imposed by its policy of insurance, TRAVELERS paid some $686,630.59. for repairs to the vessel. TRAVELERS is subrogated to the rights of KWT to the extent of its claim payment and bring this action as subrogee.

/ / /

/ / /

# FIRST CAUSE OF ACTION –NEGLIGENCE

21. The facts alleged in paragraphs 1 through 20 above are incorporated by reference.

22. TRAVELERS asserts a Claim for negligence under the General Maritime Law of the United States ("GML")[2] against NRB. Specifically, Defendant NRB, through the conduct of Blocher, owed KWT a duty to competently and safely captain the *Otis* during the sea trials. NRB breached that duty, and was negligent and negligent *per se* in the following ways:

   a. Defendant's agents and employees who were in charge of the navigation of the water taxi as alleged herein were not attentive to their duties and were not maintaining a proper and alert lookout;

   b. Defendant's agents and employees operated, captained and/or directed the water taxi without the required captains license in violation of 49 U.S.C. 8905;

   c. Defendant's agents and employees operated, captained, and/or directed the water taxi without a functioning navigational device in an unmarked underwater shallow channel;

   d. Defendant's agents and employees failed to anchor the water taxi and/or return to port when Defendant's agents and employees were unable to see or navigate the waterway safely;

   e. Defendant's agents and employees were unreasonable in their navigation and operation of this vessel; and

   f. Other negligent acts or omissions to be proven at trial.

23. The breaches of these duties owed by NRB caused damage to the *Otis*, and triggered TRAVELERS' duty to indemnify its insured for the vessel repairs.

24. The aforesaid collision and damages resulting therefrom were not caused or contributed to by any fault or negligence of TRAVELERS or its insured.

/ / /

---

[2] Or, alternatively, if Admiralty Jurisdiction does not exist, under Alaska law.

## SECOND CAUSE OF ACTION – NEGLIGENT ENTRUSTMENT

25. The facts alleged *supra* are incorporated by reference.

26. Defendant NRB knew, or in the exercise of reasonable care should have known, that Mike Blocher was an unlicensed captain, was incompetent, careless or otherwise unqualified to operate the *Otis*. Defendant NRB was negligent in the supplying, entrusting, or lending the *Otis* to Blocher, and the same negligence was the proximate cause of this accident and INTERVENOR's damages.

## THIRD CAUSE OF ACTION – BREACH OF CONTRACT

27. The facts alleged *supra* are incorporated by reference.

28. TRAVELERS (as subrogee) asserts an alternative claim for breach of contract against NRB. Through a series of purchase orders, NRB agreed to build, design, manufacture and deliver to TRAVELERS's insured KWT a vessel that was fully functioning. NRB further agreed the delivered vessel would have passed sea trials, administered by a fully licensed captain and/or master, and obtained United States Coast Guard authorization for the *Otis*.

29. Defendant failed to provide a licensed and competent captain and/or master to perform sea trials. Indeed, upon information and belief, NRB knew Blocher held no master's license from the USCG, and thus was an inappropriate and unqualified person to conduct the sea trials. Nevertheless, NRB sent Blocher to conduct the sea trials, breaching the contract. Moreover, NRB provided a vessel with a defective GPS system, which also caused and contributed to the accident. As a result of these breaches, and others according to proof, Defendant breached its contract with KWT and the same was the proximate cause of INTERVENOR's damages, described below.

## DAMAGES

30. INTERVENOR incorporates all factual allegations made above.

31. As a direct and proximate result of the occurrence made the basis of this lawsuit, TRAVELERS sustained $686,630.59. in indemnity payments for the reasonable and necessary repairs to *Otis*.

///

32. To the extent recovery is had on the alternative breach of contract matter, TRAVELERS requests its reasonable and necessary attorney's fees.

33. TRAVELERS further requests costs of court, prejudgment interest, and post-judgment interest as allowed by law.

## **PRAYER & CONCLUSION**

WHEREFORE, Intervenor prays that:

a. Summons be issued on the complaint in intervention as to defendant NRB;

b. INTERVENOR be awarded its damages from Defendant, including costs of suit, pre-judgment and post-judgment interest, and attorneys' fees to the extent allowed by law and contract;

c. INTERVENOR be entitled such other and further relief, both at law and in equity, to which it may be justly entitled.

Respectfully submitted,

Dated: May 27, 2021          GIBSON ROBB & LINDH LLP

/s/ JOSHUA A. SOUTHWICK
Joshua A. Southwick
jsouthwick@gibsonrobb.com
Attorneys for Plaintiff
TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA